UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| LISA ANN BETZNER, | ) | |
|---|---|---|
| Appellant,, | ) | |
| v. | ) | CIVIL NO. 3:09cv128 |
| FIRST FEDERAL SAVINGS BANK, | ) | |
| Appellee. | ) | |

OPINION AND ORDER

This matter is before the court on an appeal from the United States Bankruptcy Court of the Northern District of Indiana, South Bend Division. The Honorable Harry C. Dees, Jr. rendered the opinion which has been appealed by the Debtor, Lisa Ann Betzner ("Betzner"). Betzner filed her initial brief on June 1, 2009, to which the Appellee, First Federal Savings Bank ("First Federal" or "the Bank"), filed a response on June 12, 2009. Betzner filed her reply on July 3, 2009.

On July 10, 2009, First Federal filed a "Motion for Attorney Fees and Costs Incurred on Appeal." On July 15, 2009, Betzner filed a motion to strike First Federal's motion for fees and costs.

Discussion

Betzner is appealing the February 27, 2009 Judgment and Memorandum of Decision issued by Judge Dees, which became a final and appealable judgment on the date entered. This Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(a)(1), which provides that "[T]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees."

Betzner frames the issues on appeal as whether the Bankruptcy Court erred as a matter of law by denying her discharge pursuant to 11 U.S.C. § 727(a)(3) and § 727(a)(4)(A), and whether the factual findings relied upon by the Bankruptcy Court to deny Betzner's discharge pursuant to 11 U.S.C. § 727(a)(3) and § 727(a)(4)(A) were clearly erroneous.

Pursuant to Fed. R. Bank. P. 8013, the District Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." When a district court reviews a decision of a bankruptcy court, it reviews the factual findings for clear error and its legal conclusions *de novo.* A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer,* 470 U.S. 564, 574 (1985) *(quoting United States v. United States Gypsum Co.,* 333 U.S. 364 (1948)). "Findings of fact whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

For determinations that involve mixed questions of law and fact, the District Court must apply a mixed standard review. *Ornelas v. United States,* 517 U.S. 690, 696-97 (1996); *United States v. D.F., 1*15 F.3d 413, 415 (7th Cir. 1997)*, Matter of Rigdon*, 36 F.3d 1375 (7th Cir. 1994) (proper construction of a bankruptcy statute is a legal issue, subject to *de novo* review); *Matter of Wiredyne*, 3 F.3d 1125, 1126 (7th Cir. 1993).

A mixed question of law and fact occurs when the facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982); *In re Scott,* 172 F.3d 959, 966 (7th Cir. 1999). "Where both the

relevant law and the specific facts are clear, and the job of the bankruptcy court was to apply the law to the facts in the case, we reverse that court's conclusion only if clearly erroneous." *In re Rovell*, 194 F.3d 867 (7th Cir. 1999); C*ook v. City of Chicago*, 192 F.3d 693, 696 (7th Cir. 1999).

In support of her appeal, Betzner recites the following facts. First Federal (now Crossroads Bank as a result of a corporate name change) filed an adversary proceeding in the Chapter 7 bankruptcy on May 29, 2007, after Betzner filed a chapter 7 bankruptcy petition on March 1, 2007. The Bank's Complaint objected to the dischargeability of more than $1,300,000.00 in debt allegedly owed it under 11 U.S.C. § 523 and 11 U.S.C. § 727. (Designation of Record., Adv. No. 07-30392 HCD Chapter 7 proc. No. 07-3070, docket # 1 ).

Prior to filing bankruptcy, Betzner was President, chief operating officer and sole share owner of a business named "Swingsets, Inc." (Swingsets"). Betzner bought the firm from her father in 2002. Since 1990, when Swingsets was founded, the Bank had lent over three million dollars to the company. The Bank held a promissory note, personally guaranteed by the defendant, secured by mortgages on the real estate and liens on Swingsets' assets, including its accounts receivable, deposit account, inventory, equipment, general intangibles, financial records, customer lists, and computer programs. (Designation of Record Defendant's Proposed Findings of Fact and Conclusions of Law 1-34).

Betzner's firm, Swingsets, had quit producing wooden play sets on December 31, 2006, due to the combined weight of $50,000.00 embezzled by a former employee and the failure of a major account receivable, Masquerade, to make payments on its $411,000.00 balance for product delivered to it in Pennsylvania. When the debt owed by Betzner, her husband, her father,

3

his wife and Swingsets exceeded $1,600,000.00 and payments were not being made the Bank filed a complaint in the Wabash Superior Court on September 15, 2006. Entering summary judgment against Betzner, the state court ordered foreclosure of the mortgage liens. Once the debt had been reduced to judgment, the Bank liquidated the available collateral. The unpaid deficiency balance, at the time at trial in the adversary proceeding, was $1,337,524.57. *Id.* 1-34.

The Bank contended, and ultimately the bankruptcy court agreed, that the $1.3 million debt must be found nondischargeable under 11 U.S.C. § 727(a)(3) and § 727(a)(4)(A). The gravamen of the Bank's complaint, for the purposes of this appeal, was that Betzner had concealed recorded information from which her financial transactions might be ascertained, and that she knowingly and fraudulently made a false oath or account in connection with this case. (Designation of Record Defendant's Proposed Findings of Fact and Conclusions of Law 2-4). From the inception of the adversary case, Betzner denied each and every allegation of the Bank's multiple count complaint in her Answer filed September 20, 2007. (Designation of Record., Adv. No. 07-30392 HCD Chapter 7 proc. No. 07-3070, docket # 18 ). In her Answer Betzner claimed as affirmative defenses that there should be a more specific statement in the Bank's Complaint alleging fraud of some specific misconduct and some indication of the supporting evidence, that there was a lack of damages as none of the outstanding receivables were collected by the Bank, that the Bank made no attempt to pursue six accounts receivable of Swingsets, Inc., that there has been accord and satisfaction of the debt owed by Betzner, and that the Bank's violation of the automatic stay barred any recovery. (Designation of Record Defendant's Proposed Findings of Fact and Conclusions of Law 5-7).

Betzner claimed that she provided all documentation available to her that were requested

4

in discovery and she testified under oath at the 2004 examination. (Designation of Record., Adv. No. 07-30392 HCD Chapter 7 proc. No. 07-3070, docket # 43 )

Further, Betzner vigorously contended that it would be inconsistent and inconceivable that she would have the required intent to defraud at the same time she had bound her father, his wife, and her husband to the indebtedness to the Bank. The debt to the Bank was personally guaranteed by Betzner, her husband, her father Richard Snavely, his wife Susan Snavely, and the Susan Snavely Revocable Living Trust. (Designation of Record Defendant's Proposed Findings of Fact and Conclusions of Law 5-7). Betzner testified at trial that after Swingsets failed she, her husband, and her two daughters now stay with her nephew and his family in the nephew's basement. Betzner states that the older Pontiac Firebird the Bank argued she had concealed was in fact a car she had given her nephew years ago, but that because of her poor financial condition, he had given her to drive as she had no other vehicle. She stated under oath that it was not her intent to defraud anyone, including the Bank, her husband, father and his wife. She denied authoring the "smoking gun" letter the Bank relied upon to prove intent. The Bank did not call her as a witness. *Id*. 12-17. Betzner contends that discharge should not be denied because she has not violated 11 U.S.C. § 727(a)(3) or § 727(a)(4)(A).

Section 727(a)(3) provides, in relevant part, that " The court shall grant the debtor a discharge, unless - the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

This provision requires that debtors produce records that provide "enough information to

5

ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *In re Martin*, 141 B.R. 986, 995 (N.D. Ill. 1992).

In the present case, Betzner contends that the records provided to the court adequately account for her financial transactions and condition for the several years prior to filing for bankruptcy. Betzner points out that the Bank did not have to reconstruct her financial situation by sifting through a morass of documents. *Scott, 172 F.3d at 970; In re Juzwiak,* 89 F.3d 424, 428- 29 (7th Cir. 1996). Betzner claims that she complied with the Bankruptcy Code's requirement to maintain and provide the court with organized records of her financial dealings.

Betzner contends that the bankruptcy court erred by ignoring the financial records provided and the testimony of Betzner as to assets and income and lack of intent. Betzner maintains that she provided a clear and complete picture of her financial situation.

"[I]t remains within the discretion of a bankruptcy court to grant a discharge even when grounds for denial of discharge are demonstrated to exist." *In re Hacker*, 90 B.R. 994, 997 (W.D. Mo. 1987). Betzner argues that the bankruptcy court would have been within its discretion to grant the discharge, weighing the amount of debt against Betzner's alleged wrongdoing, *see Hacker,* 90 B.R. at 998.

Betzner argues that the Bank's first witness at trial, Noah Smith offered no actual proof of Betzner's intent to defraud the Bank, or that she concealed recorded information from which her financial transactions might be ascertained, or that she knowingly and fraudulently made a false oath or account in connection with this case. Betzner further argues that the Bank's second witness, Tom Polk of Intrasect Technologies, gave no testimony that proved *Betzner* concealed

6

recorded information from which her financial transactions might be ascertained, and that *she knowingly and fraudulently made a false oath or account in connection with this case.*

Betzner explained at trial the reasons for some of her valuations in each document, insisted she truthfully reported her poor financial circumstances, and had truthfully filled out her bankruptcy schedules accurately and truthfully, to the best of her knowledge and ability. Betzner argues that the Bank did not prove Betzner's documents were made with knowledge that they were false and deceptive. *Casa Investments Co. v. Brenes*(*In re Brenes*), 261 B.R. 322, 337(Bankr.D.Conn.2001)(refusing to deny a discharge when "the untruth has been a result of mistake or inadvertence"). Thus Betzner urges this court to rule that the denial of discharge based upon 11 U.S.C. § 727(a)(3) was an abuse of discretion.

Section 727(a)(4)(A) provides, in relevant part, that " The court shall grant the debtor a discharge, unless (4) the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account." "We have stated that 'the Bankruptcy Code was meant to discharge only an honest debtor from his or her debts,' and that the Code 'should be liberally applied to protect the [debtor] only in those cases where there is no intent to violate its provisions.' " *In re Suttles,* 819 F.2d 764, 766 (7th Cir. 1987) (*quoting Matter of Garman*, 643 F.2d 1252, 1257 (7th Cir. 1980)).

A debtor in a Chapter 7 liquidation case qualifies for an order discharging her nonexempt debts if she satisfies the conditions stated in § 727(a) of the Bankruptcy Code. 11 U.S.C. § 727(a) (grounds for entitlement to a discharge); *see Kontrick v. Ryan,* 540 U.S. 443, 447 (2004). In bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor." *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir. 1985).

7

In order to deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. *See Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992). Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact. *See Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987). "'Complete financial disclosure'" is a prerequisite to the privilege of discharge. *Peterson*, 172 F.3d at 967.

The Court of Appeals for the Seventh Circuit has explained that intent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998). A reckless disregard as to whether a representation is true will also satisfy the intent requirement. See id. "'[C]ourts may deduce fraudulent intent from all the facts and
circumstances of a case.'" Williamson, 828 F.2d at 252 (citation omitted). However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence. Id.
The subject of a false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Beaubouef*, 966 F.2d at 178 (citation omitted).

The Bank, in support of affirmance of the bankruptcy court's opinion, states that not long after bankruptcy was filed, it took possession of Swingsets' business premises. The Bank requested that Betzner provide it with all of Swingsets' financial records and Betzner testified at

her Rule 2004 examination that all such records were kept on Swingsets' computers. When searching the computers, the Bank discovered that all data, including all financial records, had been deleted from the computer system. Tom Polk testified at trial that the deletion occurred on March 1, 2007, the very date Betzner filed bankruptcy, and was intentional. Polk testified at length why the deletion could not have been accidental. The Bank searched for back-up tapes and discovered that all back-up tapes had been removed from the business premises, except for one which was later discovered in the server.

At Betzner's Rule 2004 examination, she testified that she couldn't remember her code to by-pass the security system, she couldn't remember her user name and password, she could not describe the box that held the back-up tapes, and she didn't know what had happened to the back-up tapes.

The Bank claims that at trial Betzner presented no plausible explanation for the deletion of all of the financial data from the computers on the very date she filed bankruptcy. She also offered no explanation for the disappearance of the back-up tapes, nor could she explain why she could not testify with certainty when Swingsets ceased operations.

The Bank's evidence offered in support of its argument that Betzner's sworn statements at her 341 meetion, at her 2004 examination, at trial, and on her Schedules and Statement of Financial Affairs justified denial of her discharge under 11 U.S.C. 727(a)(4)(A), was as follows:

1. Schedule B failed to show Betzner's ownership of a 1986 Camaro motor vehicle which she had owned since June 24, 1997 and plated on January 9, 2008.

2. Schedule B failed to show a $90,000 receivable owed to defendant by Swingsets, Inc.

3. Schedule B stated that Betzner personally owns 3 motor vehicles, when they were actually titled in the name of Swingsets.

9

4. Schedule B states that Betzner had an interest in a company called Swingsets Realty, LLC. In answer to question 18 on her Statement of Financial Affairs, however, Betzner did not disclose her interest in Swingsets Realty, LLC.

5. Although Schedule B states that defendant owned 15% of Swingsets Realty, LLC, she produced documents in discovery showing that she owned 50% of that company. At her 2004 examination and at trial, Betzner testified that she did not know how much of the company she really owned.

6. Schedule B stated that Betzner's 15% of Swingsets Realty, LLC was worth $500,000.00. At her 341 meeting, however, Betzner testified that the $500,000.00 value shown on Schedule B was for 100% of Swingsets, not just 15%. Betzner further testified that the $500,000.00 was based on a 2002 appraisal for the LLC's real estate. Then, at her 2004 exam, Betzner testified she had a 2006 appraisal for the LLC's real estate showing its value to be $670,000.00.

7. Betzner's original Schedule F failed to show over $160,000.00 of unsecured debt.

8. Nowhere on Betzner's schedules is there shown a debt she owed her father in excess of $355,000.00 for her purchase of her stock in Swingsets.

9. While Betzner did show, on her Schedule D, debts owed the Bank secured by mortgages on her home and a rental property, nowhere did Betzner schedule the debt represented by the judgment.

10. In answer to question 10 on her Statement of Financial Affairs, Betzner stated that she had made no transfers other than in the ordinary course of business within the last 2 years. Yet at her 341 meeting, she testified she sold a John Deere tractor within 2 months of filing bankruptcy for $10,000.00. According to Betzner's personal financial statement dated march, 2006, the tractor was worth $15,000.00. Betzner testified that from the $10,000.00, she paid $4000.00 on taxes due the IRS and lived on the rest. However, at her 2004 examination, Betzner testified that she did not sell the John Deere tractor for $10,000.00, but that she had sold it to her father-in-law for the $6,900.00 balance owed on the tractor to John Deere Credit, and that she had not paid the IRS anything from the proceeds of sale. When asked for an explanation for her change in testimony, Betzner testified that, "I don't know what I was thinking."

11. In March 2006, Betzner gave the Bank a personal financial statement which showed she has an interest in the following assets:

    - Country Clipper mower valued at $5500
    - Dixon riding mower valued at $500

           - Utility trailer valued at $1500
           - JD Gator valued at $500
           - Suzuki 4-wheeler valued at $750.00

Betzner's Statement of Financial Affairs does not show transfer or disposition of any of these assets. However, Schedule B shows one mower (valued at $2000) and fails to show any ownership in a utility trailer, a JD Gator, or a Suzuki 4-wheeler.

Asked about them at her 2004 examination, Betzner testified that they had been given away or sold – she had no idea when or to whom.

12. On her Statement of Financial Affairs, confirmed by her testimony at her 341 meeting, Swingsets ceased operations on January 1, 2007. At her Rule 2004 examination, however, Betzner testified that operations ceased on February 28, 2007, the day before she filed bankruptcy, not January 1, 2007, as she testified at the 341 meeting. At trial, Betzner was unsure of the date when operations ceased. Between January 1, 2007 and March 1, 2007, $103,000 was paid to creditors from Swingsets' account on checks signed by Betzner.

13. Betzner testified at the 341 meeting and again at her 2004 examination that she had no interest in a company called Premier Play Systems, LLC ("PPS"), that she had nothing to do with its organization, and that she knew nothing about any efforts to divert Swingsets' business to PPS. The Bank's evidence showed that PPS was incorporated on February 26, 2007, the Articles of Organization show Betzner's home address as PPS's principal office, the Articles of Organization show PPS's resident agent as Betzner's husband, both Betzner and her husband worked for Swingsets and now work for PPS, Swingsets' product line and PPS's product line are virtually identical down to the unusual spellings of certain products names, e.g. "Kidz Klubhouse", Swingsets and PPS sell to many of the same customers and buy from many of the same suppliers. At her 2004 examination, Betzner repeatedly denied being instrumental in, or in any way involved in a plan to change Swingsets' name to PPS, or to transfer assets, customers, or business over to PPS, including writing Swingsets' customers about PPS indicating a name change or a transfer of business to PPS. Yet at trial, the Bank produced a letter that it had recovered from Swingsets' computers, written on PPS stationary, which stated that Swingsets had changed its name and that Betzner and her husband were forming a new company to be known as Premier Play Systems, LLC.

In light of all this evidence, the Bank concludes that the bankruptcy court's findings and conclusions that Betzner concealed and attempted to destroy computerized financial data are

fully supported. The Bank argues that Betzner is asking this court to reweigh the evidence and judge the credibility of witnesses which is not permitted on appeal.

This court agrees with the Bank and the bankruptcy court. The cumulative effect of the Bank's evidence was simply overwhelming. Clearly, the bankruptcy court's findings are supported by the evidence and its inferences and conclusions were correctly drawn. This court holds that the bankruptcy court did not commit clear error in ruling that the elements in Section 727(a) had been met, permitting the discharge to be denied. *See In Re Beaubouef*, 969 F.2d at 178; *Williamson*, 828 F.2d at 251. As it is clear that the bankruptcy court's findings and conclusions were not "clearly erroneous", the opinion of the bankruptcy court must be affirmed.

## Conclusion

On the basis of the foregoing, the opinion of the Bankruptcy Court is hereby AFFIRMED.

Betzner's "Motion to Strike and for Sanction" is hereby DEEMED MOOT. If Betzner has a response to the "Motion for Award of Attorney's Fees and Cost Incurred on Appeal", the response should be filed within 30 days of the date of this Order.

Entered: September 9, 2009.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court